AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

FILED
FEB - 7 2013
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

| United States of America | ) |
|---|---|
| v. | ) |
| Matthew Aaron Llaneza | ) Case No. 4-13-70148 MAG |
| | ) |
| Defendant(s) | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __February 7, 2013__ in the county of __Alameda__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2332a(a)(2)(B) | Attempted use of a weapon of mass destruction against property used in an activity that affects interstate commerce |

This criminal complaint is based on these facts:

See attached affidavit of Special Agent Christopher Monika

☑ Continued on the attached sheet.

Approved as to form: _/s/ Andrew Caputo_
AUSA Caputo

_/s/ Complainant's signature_

Christopher Monika, Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 2/8/13

_/s/ Judge's signature_

City and state: Oakland, California

Donna M. Ryu, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT OF CHRISTOPHER T. MONIKA IN SUPPORT OF CRIMINAL COMPLAINT

I, Christopher T. Monika, being duly sworn, depose and state as follows:

1. I am a special agent with the Federal Bureau of Investigation ("FBI").

2. I make this affidavit in support of a criminal complaint charging Matthew Aaron Llaneza with attempted use of a weapon of mass destruction against property used in an activity that affects interstate or foreign commerce, in violation of 18 U.S.C. section 2332a(a)(2)(B). As described below, Llaneza attempted to detonate a vehicle-borne explosive device in an effort to destroy a Bank of America branch in Oakland, California.

3. The purpose of this affidavit is to set forth facts establishing probable cause that a crime has been committed. The information contained in this affidavit is based either on my own personal knowledge or on information provided to me by other law enforcement officers. Not all facts known to me are contained in this affidavit. The affidavit is limited to the facts relevant and necessary to establish probable cause that a crime has been committed.

## AFFIANT'S BACKGROUND

4. I am an FBI special agent and have been so employed since 2005. I am assigned to the South Bay Joint Terrorism Task Force in San Jose, California. I have worked on terrorism matters throughout my career at the FBI. I have training and experience in the investigation of different crimes against the United States, including crimes of terrorism, and in identifying terrorist support networks. I completed an FBI-sponsored counter-terrorism course in interview and interrogation techniques in 2011. In 2006 I completed training in terrorism and terrorist groups presented by the Combatting Terrorism Center at West Point. I have completed 24 weeks of intensive Arabic language training. As a Department of Defense civilian intelligence officer prior to my service with the FBI, I worked on counter-terrorism matters during one deployment to Iraq and two deployments to Afghanistan in 2003 and 2004.

## APPLICABLE LAW

5. Under 18 U.S.C. section 2332a(a)(2)(B), it is a crime to attempt to use a weapon of mass destruction against property used in an activity that affects interstate or foreign commerce. There are two elements to this crime. First, the defendant must have intended,

without lawful authority, to use a weapon of mass destruction against property used in an activity that affects interstate or foreign commerce.  Second, the defendant must have done something that was a substantial step toward committing the crime.  Title 18 U.S.C. section 2332a(c)(2)(A) defines the term "weapon of mass destruction" to include any destructive device as defined in 18 U.S.C. section 921.  Title 18 U.S.C. section 921(a)(4)(A)(i) and (vi) in turn defines the term "destructive device" to include an explosive bomb or similar device.

## EVIDENCE OF ATTEMPTED USE OF WEAPON OF MASS DESTRUCTION

6. On February 8, 2013, Matthew Aaron Llaneza drove what he believed to be a vehicle-borne explosive device to a bank branch in Oakland and attempted to detonate it.  He had prepared and constructed the car bomb with a person who was, unknown to him, an undercover FBI agent.  Because of the FBI's efforts, the car bomb Llaneza attempted to detonate was inert and could not have exploded.  Llaneza was arrested after he attempted to detonate the bomb.

7. Matthew Aaron Llaneza lives in San Jose, California.  He has stated that he supports the Taliban, wants to engage in violent jihad, and wants to conduct a terrorist attack inside the United States.  In 2011 Llaneza was arrested for possessing an AK-47 assault rifle, convicted in state court of transportation of an assault weapon and possession of a high capacity magazine, and sentenced to one year in prison.  He was released from custody in November 2011.

8. On November 30, 2012, Llaneza met with a man who led him to believe he was connected with the Taliban and the mujahidin in Afghanistan.  In reality, this man was an undercover FBI agent.  At this initial meeting, Llaneza proposed conducting a car-bomb attack against a bank in the San Francisco Bay Area.  He proposed structuring the attack to make it appear that the responsible party was an umbrella organization for a loose collection of anti-government militias and their sympathizers.  Llaneza's stated goal was to trigger a governmental crackdown, which he expected would trigger a right-wing counter-response against the government followed by, he hoped, civil war.  Llaneza identified the Federal Reserve Bank in San Francisco or, alternatively, an unspecified local bank as potential targets for the attack.

9. At the next meeting between Llaneza and the undercover agent, on December 7,

Llaneza altered his original idea of the Federal Reserve Bank as the target of the attack, saying he thought there would be too much security around that site. He proposed instead that the men bomb a Bank of America branch in Oakland, reasoning that the name of the bank and Oakland's location as a center of protests made it an appropriate target. The men developed a plan to construct a car bomb. Llaneza offered to purchase chemicals and other items necessary to construct the device.

10. The next meeting between Llaneza and the undercover agent occurred a week later, on December 14. During the meeting Llaneza researched the location of Bank of America branches and selected as the target the Bank of America branch located at 303 Hegenberger Road in Oakland. While viewing aerial imagery of the bank and its surroundings, Llaneza specified possible locations for the car bomb to be detonated and for Llaneza and the undercover agent to position themselves when they detonated the bomb. Llaneza specified a spot next to a support column of the bank building as a good location for the bomb, expressed a desire for the bomb to bring down the entire bank building, and offered to drive the car bomb to the bank at the time of the attack.

11. Activities undertaken at the Bank of America branch at 303 Hegenberger Road in Oakland affect interstate commerce. Bank of America is headquartered in North Carolina and operates in multiple states. A full range of banking transactions may be performed at the Hegenberger Road branch during normal business hours. Automated teller machines ("ATMs") are available for use at the branch during all hours.

12. On December 23, Llaneza and the undercover agent drove to 303 Hegenberger Road and surveilled the location. Llaneza again stated that he would drive the car bomb to the attack and repeated his goal of collapsing the entire bank building. As the men drove around the area, Llaneza confirmed the car-bomb location and the location from which the men would detonate the bomb. He stated he would dance with joy when the bomb exploded. As the men later drove south on Interstate 880, Llaneza pointed out a storage facility in Hayward located next to the highway. He suggested obtaining a storage unit at the facility, where the men could assemble the bomb. The FBI subsequently rented a storage unit at a facility near the one Llaneza

pointed out and positioned a sport utility vehicle ("SUV") in it for use as the delivery vehicle for the car bomb.

13. Llaneza and the undercover agent returned to the storage unit on January 12, 2013. As the men drove there, Llaneza offered to travel to Afghanistan to train Taliban fighters and said he wanted to go to Afghanistan as quickly as possible after the attack on the bank. With the undercover agent, he developed a plan to travel to Pakistan by ship after the attack and from there to Afghanistan. Inside the storage unit, upon viewing the rear compartment of the SUV, where the bomb would be placed, Llaneza laughed and hugged the undercover agent.

14. On January 26 Llaneza and the undercover agent loaded twelve five-gallon buckets into the SUV. Each bucket contained chemicals that had been obtained and prepared by the FBI to simulate an explosive mixture. Llaneza agreed to purchase two cellphones for the car bomb's remotely operated trigger device, along with an LED light, a nine-volt battery, and a battery snap cap for use in constructing the device. After completing their work in the storage unit, the men drove to Milpitas, where Llaneza purchased the two cellphones for the trigger device and gave them to the undercover agent. The FBI subsequently constructed the trigger device using one of the cellphones. As further described below, the other cellphone was used by Llaneza at the time of the attack to call the cellphone in the trigger device and, Llaneza believed, detonate the bomb.

15. On February 2, Llaneza and the undercover agent completed most of the construction of the bomb, with the understanding that they would finalize its construction on the day of the attack by connecting a blasting cap and the trigger device previously constructed from the two cellphones Llaneza bought. They also tested the trigger device and confirmed that it operated correctly. Their work at the storage unit complete, the men once again traveled to the target bank branch in Oakland and conducted a further reconnaissance of the area.

16. On February 7, Llaneza drove the SUV containing the purported car bomb from the storage unit in Hayward to a parking lot in Union City. The undercover agent followed in a separate vehicle. While at the Union City parking lot, in the early morning hours of February 8, Llaneza completed assembly of the bomb in the presence of the undercover agent. Llaneza then

1 drove the SUV to the Bank of America branch at 303 Hegenberger Road in Oakland and parked
2 the vehicle under an overhang of the bank building. He armed the trigger device and then
3 proceeded on foot to a nearby location a safe distance from the bank building, where he met the
4 undercover agent. Once there, Llaneza attempted to detonate the bomb, by using the second
5 cellphone he had purchased to place two calls to the trigger device attached to the car bomb.
6 Federal agents then arrested him.

## CONCLUSION

17. Based on the facts set forth in this affidavit, I have probable cause to believe that Matthew Aaron Llaneza has committed the crime of attempted use of a weapon of mass destruction against property used in an activity that affects interstate or foreign commerce, in violation of 18 U.S.C. section 2332a(a)(2)(B).

CHRISTOPHER T. MONIKA
FBI Special Agent

Subscribed and sworn to before me this _____ day of February, 2013.

DONNA M. RYU
United States Magistrate Judge

5