STEVEN G. KALAR
Federal Public Defender
Northern District of California
JEROME E. MATTHEWS
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:   (510) 637-3500
Facsimile:    (510) 637-3507
Email:          Jerome_Matthews@fd.org

Counsel for Defendant Llaneza

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>      v.<br><br>MATTHEW LLANEZA,<br><br>            Defendant. | **Case Nos.:** CR 13-00145 YGR<br><br>**MATTHEW LLANEZA'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR COMPASSIONATE RELEASE** |

**PRELIMINARY STATEMENT**

Matthew Llaneza—who has either undergone or is in the midst of transgender hormone treatment—has filed a pro se motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Undersigned counsel has filed a notice of appearance. After reviewing her motion, counsel believes that she correctly cites the basis for the Court's jurisdiction under the relevant statute, and has supplied the Court with sufficient evidence that she has exhausted her administrative remedies prior to filing. This brief supplements her motion.

SUPP RE MTN FOR COMP RELEASE
*LLANEZA*, CR 13–00145 YGR

1

# ARGUMENT

## I. Matthew has Sufficiently Demonstrated Extraordinary and Compelling Reasons Justifying Relief

### A.     Physical Health Conditions

Matthew has suffered from asthma for most of her life. As her motion indicates, it was a disqualifying condition for service with the Marine Corps.[1]

This Court and the government have recognized that chronic asthma "'presents an extraordinary and compelling reason' warranting compassionate release, 'given the current pandemic and the likelihood that [an inmate] would potentially suffer severe symptoms due to [his] personal health characteristics' if [he] contracted Covid-19." *United States v. Fowler*, No. 17-CR-00412-VC-1, 2020 WL 3034714 (N.D. Cal. June 6, 2020) (quoting government's opposition; brackets modified).

As of this date, defense counsel is attempting to determine in what manner "valley fever" or male-to-female hormone therapy might put a person at higher risk for a severe COVID-19 infection if the virus is contracted.

### B.     Mental Health Conditions

Matthew's mental illness is relevant to this motion for separate, but related, reasons. First, there is the potential effect of a COVID-19 infection on persons with mental disorders. Second, Matthew's disorders—or more precisely, the extent to which his disorders played a part in his underlying conviction—suggest that he is at low risk of recidivism.

#### 1.     COVID-19 and potential associations with mental disorders.

Research suggests that COVID-19 is associated with a "wide range of psychiatric and neurological complications."[2] While there is not a great deal of available data, the ability of the novel coronavirus to reach and affect the brain is documented. *Id.* What is unknown, and therefore more disturbing, is how this might play out for persons such as Matthew who have serious existing mental illnesses. Given the increased risk of transmission and infection among incarcerated persons, it is

---

[1] Matthew apparently did not disclose that he had asthma when he enlisted; it was later discovered after a pulmonary function test.

[2] Available at https://www.statnews.com/2020/06/25/covid-19-brain-complications/.

SUPP RE MTN FOR COMP RELEASE
*LLANEZA*, CR 13–00145 YGR

2

especially important to minimize that potential for those that might suffer more severe psychosis if they contract the virus.

### 2. Matthew has a Low Risk of Recidivism

In her motion, Matthew mentions that she has a low risk of recidivism and has attached an exhibit confirming that her "Recidivism Risk Level" is low. This merits elaboration. First, the assessment appears to have been conducted by personnel at FCI Sheridan late last year. FCI Sheridan is a medium security facility, suggesting that the Bureau of Prisons does not consider Matthew to present a high risk of danger.

Second, and equally important, is the nature of the underlying case: while it involved very serious conduct, there nonetheless was a mental health component that suffused every aspect. To reprise, Matthew pleaded guilty to attempted use of a weapon of mass destruction after an undercover FBI agent, posing as a jihadist, helped instigate a plot to blow up a bank building. At sentencing Matthew's demonstrable mental illness was front and center. For example, she made claims of being a trained military operative with bomb-making experience, training others in tactical warfare, building unmanned drones and having worked with drug cartels. Matthew also claimed to have been in hiding since 2005 because of death threats against her. Of course, none of this was true.

During the course of the proceeding, Dr Scott Lines examined Matthew to determine whether she manifested a high degree of suggestibility while in the manic phase of her bipolar disorder, as is common for those suffering from this particular mental disease. Dr Lines explained:

> These are clear manifestations of the irrational flight of ideas found in the typical manic episode.  Similarities exist between these bizarre ideas and the irrational thought processes found at the root of his alleged offense conduct.  An idea occurs to him, or in the case of his alleged offense conduct, is offered to him, and when he is manic the irrational idea conforms to the desire to stimulate chaos and disorder, reflective of the chaos and disorder he feels while under the sway of his mental disorder.

In the same vein, defense counsel suggested that the government agent's conduct trod close to entrapment. Even the probation officer's sentencing recommendation noted that Matthew had taken no overt steps to plan a terrorist attack prior to meeting the agent, and that there was no evidence that Matthew would or could have carried out this contrived plot without the agent's active participation.

SUPP RE MTN FOR COMP RELEASE
*LLANEZA*, CR 13–00145 YGR

3

Ultimately, however, the parties and probation officer jointly recommended a sentence of 180 months, which the Court adopted. This case therefore is distinguishable from cases where the defendant's mens rea, criminal propensity and danger to the community are clearly established.

Moreover, Matthew's criminal history was overstated. As defense counsel pointed out at sentencing, Matthew's sole prior contact with the criminal justice system was an arrest for being under the influence of a controlled substance and the related, subsequent conviction for possessing an assault weapon. PSR, ¶¶ 39, 44. But that arrest arose when Matthew's father found an AK-47 in a safe in Matthew's recreational vehicle and turned it over to San Jose Police. Notably, Matthew had legally purchased and possessed the rifle in Arizona; she was not aware that possessing such a rifle was illegal in the State of California. Nonetheless, the applicable guidelines provision for the offense, USSG §3A1.4, automatically placed Matthew in Criminal History Category VI.

Together, the foregoing factors demonstrate that Matthew has been mentally ill nearly all of his life, but, given his lack of a serious prior criminal history and the BOP's assessment that he poses a low risk of recidivism, that section 3553(a) factors counsel in favor of a sentencing reduction.

## II.  Matthew has Served Over 50% of her Sentence

Matthew has been in custody for 7.5 years; with good time credits, she has served over one-half of her sentence. The government may argue that this is insufficient time in custody to merit a reduction, but there is no magic number minimum. To the contrary, there are many instances in which district courts have granted compassionate release to persons who have served *less* than 50% of their sentence: *United States* v. *Robinson*, 18-03042-04-CR-S-SRB (W.D.Mo.) (served approximately 28 months of 132 month sentence); *United States v. Harrison*, 17-00264-01-CR-W-GAF (W.D. Mo.) (served approximately 23 months of 112 month sentence); *United States v. Rodriguez-Acedo*, Case No. 19-cr-3539, Dkt. No. 44 (S.D. Cal. July 21, 2020) (served approximately 11 months of a 37 month sentence); *United States v. Tubbs-Smith,* No. 18-20310, , Dkt. No. 65 (E.D. Mich. July 2, 2020) (release after 26 months of 10 year sentence to serve state sentence); *United States v. Torres*, 2020 WL 4019038 (S.D. Fla., July 14, 2020) (5 months into 24 month sentence); *United States v. Loyd*, No. CR 15-20394-1, 2020 WL 2572275 (E.D. Mich. May 21, 2020) (release

after 3 years of 10 year sentence); *United States v. Locke*, No. 18-cr-132, 2020 WL 3101016, at 1, 6 (W.D. Wash. June 11, 2020) (compassionately releasing a defendant who had "served no more than six months of his 62-month sentence"); *United States v. Brown*, Case No. 2:18-cr-360, Dkt. No. 35 (N.D. Ala. May 22, 2020) (granting compassionate release to defendant 11 months into 60 month sentence); *United States v. Ben Yhwh*, --- F. Supp. 3d ---, 2020 WL 1874125, at *2 (D. Hawaii Apr. 13, 2020) (granting compassionate release to defendant less than 13 months into 60 month sentence); *United States v. Delgado*, 2020 WL 2464685, at *1, *4 (D. Conn. Apr. 30, 2020) (granting compassionate release to defendant 29 months into 120 month sentence); *United States v. Winston*, Case No. 1:13-cr-639-RDB, Dkt. No. 295 (D. Md. Apr. 28, 2020) (granting compassionate release to defendant 36 months into 120 month sentence).

These sentences confirm that there is no hard and fast numerical standard governing compassionate release. A reduced sentence for Matthew would be completely consistent with available sentencing data.

## CONCLUSION

Defense counsel is not yet in a position to suggest to the Court the extent of a sentence reduction, and would first like to complete his review of Matthew's medical records—both from the BOP and those available from healthcare providers who treated Matthew prior to his arrest—and further consultation with medical professionals. It is anticipated that this process will be complete at the time the reply brief is due to be filed.

Dated:   August 12, 2020					Respectfully submitted,

							STEVEN G. KALAR
							Federal Public Defender


							       /S
							JEROME E. MATTHEWS
							Assistant Federal Public Defender

SUPP RE MTN FOR COMP RELEASE
*LLANEZA*, CR 13–00145 YGR